JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | SA CV 20-00623-AB (MAAx) | Date: | July 28, 2021 |
|---|---|---|---|

Title: *EM General, LLC v. Ecommerce, LLC, et al.*

Present: The Honorable **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER **GRANTING** MOTIONS TO DISMISS; **DENYING** MOTION FOR SANCTIONS (DKT. NOS. 60, 63, 65)

Before the Court are the following Motions: (1) Defendant Commercial Bank of California's ("CBCal") Motion To Dismiss; (2) Defendants Electronic Commerce, LLC ("E-Commerce"), Darnell Ponder ("Ponder"), and Khaazra Maaranu's ("Maaranu") Motion to Dismiss; and (3) Defendant CBCal's Motion for Sanctions. Plaintiff EM General, LLC ("EmGen" or "Plaintiff") opposed the Motions, and Defendants replied. The Court determined these matters appropriate for decision without oral argument and **VACATED** the hearing set for June 11, 2021. For the reasons stated herein, the Court **GRANTS** the Motions to Dismiss and **DENIES** CBCal's Motion for Sanctions.

I.  **BACKGROUND**

The parties are familiar with the detailed facts of this case as the Court has laid them out previously. (*See* Dkt. No. 50, Order at 2-4.) Plaintiff began processing sales of its N-95 masks with E-Commerce in February 2020. (TAC ¶¶ 19, 20, 26, 35.) Plaintiff alleges it was induced into signing the Merchant

Processing Agreement ("MPA") and the Additional Services Agreement ("ASA") after seeing advertisements that indicated no holds on money, unlimited processing, and processing without being shut down or scaling too fast. (*Id.* at ¶¶ 27, 35, 36.) Plaintiff also states that Defendant Maaranu promised Plaintiff "unlimited scaling," and Defendant Ponder promised Plaintiff he would "get your unlimited volume merchant account setup for your business." (*Id.* at ¶¶ 31, 32.) Defendant Ponder emailed Plaintiff on February 12, 2020 to state that E-Commerce had "two accounts approved for unlimited scaling!" (*Id.* at ¶ 33.)

Plaintiff signed the MPA and ASA that same date—February 12, 2020—and the relevant provisions are as follows:

Under the MPA, Electronic Commerce has the right to:

- "audit all Card transactions and deposits" and "withhold amounts from [EMG] if [Ecommerce] discover[ed] inaccuracies" (TAC, Exh. F, ("MPA"), MPA § 4(E));
- charge EMG's account without notice or require payment from plaintiff for any transaction including those "where the Cardholder disputes the sale, quality, or delivery of merchandise or performance or quality of services; (MPA § 5(A)(v));
- delay or withhold settlement payments or terminate the MPA based on changes in EMG's monthly sales volume, average ticket size, or other factors that deviated from the information on Plaintiff's Application (MPA § 5L);
- "disallow, discontinue, suspend, or change [EMG's] use of Portal Services at any time without notice" (MPA § 10(C));
- the MPA could be terminated in the event of "default" which includes the following: reasonable belief that "fraud may be occurring"; monthly volume that exceeds "120% of the average annual volume indicated on the Merchant Application"; "returns greater than three percent"; and if Electronic Commerce "determine[d] that [EMG's] Card transactions or the circumstances surrounding [its] card transactions ha[d] become irregular or increase[d]" Electronic Commerce's "exposure to chargebacks, reputational, or other security risks"  (MPA at § 7(A)).

According to the MPA, Electronic Commerce had "no liability to [Plaintiff] for any direct or indirect losses" stemming from Electronic Commerce's

"suspension of funds disbursement or failure to pay transactions in connection with an Event of Default." (MPA at § 7(A).)

The ASA allows for (i) Chargeback Protection, a service that authenticates transactions; (ii) Chargeback Evasion, which alerts merchants that a consumer is disputing a charge; and (iii) Chargeback Representment, which gathers information to ensure compliance with card network rules and regulations. (TAC, Ex. G at 24.)

The ASA bound Plaintiff to the "terms as set forth in [the] original Merchant Application," which incorporated the MPA. (*See id.*) Finally, a Reserve Acknowledgement and Acceptance provided Electronic Commerce with authority to hold $75,000 of plaintiff's funds in reserve. (TAC, Ex. H at 26.) This was "in addition to the [MPA]" and "nothing herein in any way limit[ed] or reduce[d] any of the rights set forth in the [MPA]." (*Id.*)

Plaintiff subsequently brought suit after E-Commerce froze its funds and locked Plaintiff out of the E-Commerce portal thus preventing it from issuing refunds to customers. (TAC ¶¶ 51-55.)

## II.  LEGAL STANDARDS

### A. Motion to Dismiss

Federal Rule of Civil Procedure ("Rule") 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   The complaint must also be "plausible on its face," that is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).   A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.   Labels,

conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### B. Rule 11 Sanctions

Rule 11 outlines procedural and substantive requirements to guide whether a court should sanction an attorney. "[T]he central purpose of Rule 11 is to deter baseless filings in district court and . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447, 110 L.Ed.2d 359 (1990).

Under Rule 11, the party moving for sanctions must serve the motion on the opposing party pursuant to Rule 5 no less than twenty-one days before filing the motion with the court. Fed. R. Civ. P. 11(c)(2). This strictly-enforced safe harbor period allows the opposing party to withdraw or appropriately correct "the challenged paper, claim, defense, contention, or denial" without penalty. Fed. R. Civ. P. 11(c)(2); *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005). If the opposing party fails to remediate the concern, the moving party may file the motion with the court "describ[ing] the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2).

Provided these procedural requirements are met, the Court may sanction an attorney under Rule 11 for filing a pleading or other paper that is "frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. Cty. of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997); Fed. R. Civ. P. 11(b)(1–4). Nonetheless, "[i]f, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time that the position is adopted, then sanctions should not be imposed." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986).

Imposing sanctions under Rule 11 "is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'r Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). As such, courts have "significant discretion" when determining whether to award sanctions. *See* Fed. R. Civ. P. 11(b), Advisory Committee Notes (1993 Amendment).

///
///
///

### III. MOTIONS TO DISMISS

**A. Plaintiff's TAC Fails to State a Breach of Contract Claim.**

To claim breach of a written, integrated contract, a plaintiff must identify "the specific provisions" imposing the obligation the defendant allegedly breached. *In re Anthem Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016) (quoting *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011)); *see also Frances T. v. Vill. Green Owners Ass'n*, 42 Cal. 3d 490, 512–13 (1986).

Plaintiff's TAC states that "implied in the agreement" were promises to not interfere with Plaintiff's business and that Plaintiff would be allowed to issue refunds to customers. (TAC ¶¶ 59, 62.) Plaintiff also alleges that a breach occurred when Defendant denied Plaintiff "access to the authorize.net portal and its funds." (*Id.* ¶ 63.) Plaintiff does not cite any provision of the MPA or other documents that amounted to a breach but rather relies on purported implicit duties.

As this Court previously stated in dismissing Plaintiff's claims, implicit duties are insufficient to state a breach of contract claim. (Order at 6, citing *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d at 982–83 (rejecting breach of contract claim based on implied or implicit duties where plaintiff failed to identify contractual provisions breached or allege any facts showing any "implied contracts existed beyond vague, conclusory allegations" or "elaborate upon the nature and scope" of any such implied contract).)

Plaintiff has failed to provide any factual bases that would undermine the crux of this contract dispute—all actions allegedly taken by Defendants were expressly allowed by the MPA, including terminating and suspending services due to inaccuracies, changes in sales volume, reasonable belief of fraud, and circumstances that seemed "irregular." (*See* Order at 7, citing MPA provisions in detail.) Plaintiff has again failed to state a claim for breach of contract and the Court **GRANTS** Defendants' Motions to Dismiss Plaintiff's First Cause of Action.

**B. Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails.**

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 371 (1992) (citing Restatement (Second) Contracts § 205). "The [California] Supreme Court has clarified,

however, that an implied covenant of good faith and fair dealing cannot contradict the express terms of a contract." *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 55 (2002) (citing *Carma*, 2 Cal. 4th at 374).   Instead, the covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (Cal. 2000).

The TAC alleges that Defendants acted in bad faith by refusing to allow Plaintiff to issue refunds and conduct business.  (TAC ¶¶ 70-71.)   However, as discussed above and in its previous Order, the Court has found that seizing funds and the other actions alleged, including freezing the account and blocking access, is expressly allowed under the MPA. As such, Defendants actions neither frustrated Plaintiff's right to receive benefits under the contract as they are *permitted* under the contract and any implied duties here directly contradict the express terms of the contract. No claim for implied covenant of good faith and fair dealing exists and the Court **GRANTS** Defendants' Motions to Dismiss the Second Cause of Action.

### C. Plaintiff's Intentional and Negligent Fraudulent Inducement Claims Fail.

As the Court has previously noted, the economic loss rule bars fraud and negligent misrepresentation claims that are based entirely on an alleged contract unless a plaintiff can "identify an independent duty that was violated." *UMG Recordings*, 117 F. Supp. 3d at 1103–04; *see also Erlich v. Menezes*, 21 Cal. 4th 543, 554 (1999) ("[A] breach of contract is tortious only when some independent duty arising from tort law is violated." (internal quotes omitted)). In fact, California does not recognize a claim for "negligent misrepresentation" based on a false promise. *Color Match Pool Fittings, Inc. v. Aquastar Pool Prods., Inc.*, No. CV 06-781-GW(PLAx), 2007 WL 5193737, at *4 (C.D. Cal. Aug. 10, 2007); *see also Tarmann v. State Farm Mut. Auto. Ins. Co*. 2 Cal. App. 4th 153, 159 (1991) ("[W]e decline to establish a new type of actionable deceit: the negligent false promise.").

To survive a motion to dismiss, Plaintiff must plausibly allege with particularity the factual basis for these fraud-based claims. Here, Plaintiff alleges that Defendant "knew" that allowing Plaintiff unlimited scaling and volume would "trigger warnings from Defendants' risk department" and "Defendants would freeze all of Plaintiff's funds and thereby prevent Plaintiff from refunding any

customers." (TAC ¶¶ 77-78.) First, these claims are wholly rooted in contract-based liability and Plaintiff has provided no separate basis for liability under these theories—the economic loss rule bars these claims.

Second, Plaintiff asks the Court to ignore the fact that—even accepting all allegations as true—the MPA and ASA unequivocally place limits on scaling, volume, and any other significant deviations from those represented in the application. Plaintiff signed the MPA and ASA which, as the Court has noted on multiple occasions, allowed Defendants to do exactly what they did here.

Finally, Plaintiff has failed to plead either claim with particularity as is required by Rule 9(b). Plaintiff conclusorily alleges that at the time Defendants made any promises or representations about scaling and volume, they knew the representations were false. (TAC ¶¶ 74, 76, 84, 85.) This is insufficient to state a claim under Rule 9(b). *See Lazar v. Superior Court,* 12 Cal. 4th 631, 638-39 (1996) (holding that plaintiff must allege knowledge of falsity at the time the statements were made to state misrepresentation claims). Here, Plaintiff presumes Defendants' lack of veracity by retroactively implying motive to legally permissible actions. Plaintiff does not allege with particularity that Defendants' knowingly, recklessly, negligently, or otherwise made false statements to induce Plaintiff's reliance. The falsehood requirement must be based upon plausible allegations—not mere hindsight. The Court **GRANTS** Defendants' Motions to Dismiss the Third and Fourth Causes of Action.

### D. Plaintiff's Accounting and Constructive Trust Claims Likewise Fail.

Plaintiff's claim for accounting is still based upon alleged misconduct that was wholly permitted under the express terms of the MPA and is derivative of the other failed claims, it too must fail. *Robinson v. Nationstar Mortg.*, No. CV 14-8282 PSG (ASX), 2015 WL 13651766, at *5 (C.D. Cal. Apr. 15, 2015) (accounting claim dismissed because it was derivative of other dismissed claims); *see also Union Bank v. Superior Court*, 31 Cal. App. 4th 573, 593 (1995) ("no right to an accounting" where defendant "engaged in no misconduct"). Accordingly, the Court **GRANTS** Defendants' Motions to Dismiss this cause of action.

Finally, because imposition of a constructive trust is an equitable remedy and not a claim for relief, the Court **GRANTS** Defendants' Motions to Dismiss this cause of action. *See Malfatti v. Mortg. Elec. Registrations Sys, Inc.,* No. CV 11-03142 WHA, 2011 WL 5975055, at *3 (N.D. Cal. Nov. 29, 2011) ("As a

constructive trust is not a substantive devise but merely a remedy . . . .") Even if this claim could be construed as a cause of action, it would fail because the underlying claims upon which it rests have likewise failed.

### E. Leave to Amend

Federal Rule of Civil Procedure 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit holds "'[t]his policy is to be applied with extreme liberality.'" *Eminence Capital, L.L.C. v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 712 (9th Cir. 2001)). However, leave to amend is not automatic. If a Rule 12(b)(6) motion is granted, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

Plaintiff has failed to provide any legally viable bases despite this being its fourth complaint. Additionally, Plaintiff seemingly disregarded the Court's clear guidance that any subsequent amendments could not be premised upon actions Defendants took that were expressly permitted by the MPA or ASA. *See* Order at 13. The Court **DENIES** additional leave to amend.

### IV. MOTION FOR SANCTIONS

Defendant CBCal brings its Motion for Sanctions based upon Plaintiff's reassertion of theories that the Court previously dismissed. (Mot. at 1-2.) Specifically, CBCal argues that in maintaining its position on implied duties, Plaintiff blatantly ignored the Court's Order and reasserted frivolous claims. (*Id.* at 5-6.) While the Court agrees that Plaintiff tows the line when it comes to reasserting claims on legally insufficient bases, the Court also notes that Plaintiff reasserts a seemingly new theory of liability in the TAC—namely that Defendants made promises via advertising and email to Plaintiff that induced Plaintiff into signing the MPA and ASA. (*See* TAC at ¶¶ 27-40.)

The Court, after hearing oral arguments, granted leave to amend in its previous Order so that Plaintiff could provide the details regarding this theory of liability. (*See* Order at 13.) The mere fact that Defendant CBCal then had to file a subsequent motion to dismiss—which largely reiterates the same arguments as its previous motion—is insufficient to justify sanctions.

      Further, while CBCal's Motion states it met and conferred with Plaintiff pursuant to Local Rule 7-3, this is insufficient to show compliance with Rule 11's mandate that the moving party serve the motion on the opposing party pursuant to Rule 5 no less than twenty-one (21) days before filing the motion with the court. Fed. R. Civ. P. 11(c)(2). Here, CBCal states that it met and conferred with Plaintiff on April 26, 2021, but then filed the Motion on May 13, 2021—less than twenty-one (21) days later—and without reference to whether Plaintiff was provided a copy of the Motion on April 26, 2021. (Dkt. No. 65 at 2.)

      Nonetheless, the Court finds that because sanctioning a party "is an extraordinary remedy, one to be exercised with extreme caution," it will exercise its discretion and **DENIES** CBCal's Motion for Sanctions. *Operating Eng'r Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).

## V.    CONCLUSION

      For the reasons stated above, the Court **GRANTS** Defendants' Motions to Dismiss and **DENIES** Defendant CBCal's Motion for Sanctions. This case is ordered closed.

      **IT IS SO ORDERED**.